GREGORY *v.* THORREZ.

1. ADVERSE POSSESSION—INNOCENT MISTAKE.
   One may gain title to property by adverse possession even
   though through an innocent mistake in setting out the
   boundaries.

2. BOUNDARIES—ACQUIESCENCE.
   A boundary line, long treated and acquiesced in as the true
   line, ought not to be disturbed on new surveys, 15 years'
   recognition and acquiescence being ample for purpose of
   establishing the boundary.

3. ADVERSE POSSESSION—BOUNDARIES—ACQUIESCENCE—EVIDENCE.
   In action of ejectment between owners of two adjacent city
   lots, evidence that defendants' grantor planted hedge within
   one foot of what both he and plaintiffs' then predecessor in
   title believed to be the boundary line and such line was
   acquiesced in for more than 15 years *held*, sufficient to estab-
   lish title in defendants to seven-foot strip of land in dispute
   notwithstanding deed to defendants was given less than 15
   years prior to commencement of action and did not include
   such land in description.

Appeal from Jackson; Simpson (John), J. Sub-
mitted June 17, 1936. (Docket No. 116, Calendar
No. 39,054.) Decided October 5, 1936.

Ejection by George V. Gregory and wife against
Camiel Thorrez and Flossie Thorrez to recover pos-
session of land. Judgment for plaintiffs. Defend-
ants appeal. Reversed and remanded for judgment
for defendants.

*John W. Bannasch,* for plaintiffs.

*Leslie & Denton* and *Rosenburg & Painter,* for
defendants.

Butzel, J.   The street frontage of lots 1 and 10 of Loomis' Homewild Addition No. 2 to the city of Jackson, Michigan, curves so as to form a semicircle.   Evidently a mistake was made by the surveyor in staking out the lots.   The trial judge found that in cutting the two lots into three equal lots having a frontage of approximately 113 feet, an inverse curve in the arc of the circle had been disregarded and in some manner 12 feet and a fraction of land was disregarded between the three adjoining lot owners and the original survey stakes had been thus erroneously placed.   When William Braund, defendant's grantor, purchased his lot in February, 1915, a line was pointed out to him, which was supposed to be the correct south boundary line, but which in fact was about seven feet south of the true boundary line as specified in the deed.   One Billeter on purchasing the lot south of the Braund lot, also mistook the correct line and regarded as the northerly boundary of his lot the same line that Braund used.   In 1917 or 1918, Braund consulted with Billeter in regard to building a hedge between the two properties.   After first intending to build it together, they concluded it would be impractical and Braund built it alone, within one foot of what he believed the true southerly line of his lot.   In so doing he drew a string across the lot starting from the stake.   Both owners acquiesced in the line drawn from the stake and no question arose between them.

Braund for 10 years and upwards cut the grass on his lawn up to the hedge which he also trimmed. In 1928 he sold the lot and the house thereon to defendants.   At the time of the sale, he pointed out the comparatively small piece of property that they believed constituted the lot he was selling.   He delivered possession of the lot and gave defendants a

deed which they believed covered the entire lot, but which again did not include the southerly seven feet in dispute.

In 1922, Billeter sold his adjoining lot to a Mr. Luke who was again shown the stake as the demarcation of the lot line. Subsequently, plaintiffs acquired title to the lot south of defendants', but made no complaint whatsoever until 1934 when the lot was surveyed for the purpose of building a driveway and the error was then discovered. A suit in ejectment resulted in a judgment for plaintiffs in the court below. Defendants on appeal claim the strip in controversy on the theory of adverse possession. Appellees contend that the possession of Braund and appellants is not adverse because their claim to the strip was based on the mistaken belief that it was included in the description in the deeds. We have held, however, that one may gain title to property by adverse possession even though through an innocent mistake in setting out the boundaries. 97 A. L. R. 14; *Greene* v. *Anglemire,* 77 Mich. 168; *Gould* v. *Fiero,* 262 Mich. 467. In the latter case, we held:

"Although defendants may have been mistaken as to the true line, they took the disputed strip, believing it to be their own, and they have claimed and held it adversely for more than the statutory period, and hence have title to it by adverse possession."

The main question for our determination is whether the appellant Thorrez may tack to his possession the adverse occupancy of his predecessors in title so as to make out the statutory period without having the disputed strip described in his deed. Numerous cases in Michigan have laid down the general rule that successive possessions may not be tacked where the disputed land is not described in

the deed. *Lake Shore & M. S. R. Co.* v. *Sterling,* 189 Mich. 366; *Hanlon* v. *Ten Hove,* 235 Mich. 227 (46 A. L. R. 788); *Jeffries* v. *Sheehan,* 242 Mich. 167. These cases, however, do not consider the question of whether tacking is permitted where successive grantees over a period of 15 years had the lots first pointed out to them and possession given with the deed. Is the last grantee entitled to the ownership of the disputed strip under such circumstances; notwithstanding the fact that he has not owned it for 15 years, and it has not been described in his deed, notwithstanding that he and his predecessors have claimed ownership and possession for over 15 years and this claim has been acquiesced in by plaintiffs and their predecessors in title? The rule outside of Michigan permits such parol transfer. It is not the deed that creates the privity, but the parol transfer of possession. See *Davock* v. *Nealon,* 58 N. J. Law, 21 (32 Atl. 675). In *Belotti* v. *Bickhardt,* 228 N. Y. 296 (127 N. E. 239), a similar question was raised and the court held that privity could be established by parol and that successive periods could be added together where possession had been given by parol. See, also, *Wishart* v. *McKnight,* 178 Mass. 356 (59 N. E. 1028, 86 Am. St. Rep. 486) where the court held:

"This evidence would have warranted the jury in finding that each of the grantees transferred to his successor his possession of the strip of land in question, and that thereby the demandant was continuously kept out of possession."

This seems to be the prevailing rule in most of the other States. See 46 A. L. R. 792.

Inasmuch as the question involves title to real estate, the correct rule in Michigan should be definitely stated. In *Maes* v. *Olmsted,* 247 Mich. 180,

the question arose whether a parol transfer would be sufficient to warrant tacking and the court held that if that was the rule, nevertheless, the period was insufficient to give title by adverse possession. In *Arduino* v. *City of Detroit,* 249 Mich. 382, it was held that a parol transfer with the delivery of actual possession was sufficient. However, four judges merely concurred in the result. We believe, however, the law of Michigan was clearly established in *Gildea* v. *Warren,* 173 Mich. 28 (not referred to in the briefs), where again it was the claim of plaintiff· that her house was built where it then stood more than 50 years ago and that the strip of land in controversy had been occupied as part of the yard surrounding the residence for more than 30 years, but the date of her deed showed that her own possession did not continue for 15 years. The lower court directed a verdict based on *Sheldon* v. *Railroad Co.,* 161 Mich. 503. On appeal, the Supreme Court pointed out that in the *Sheldon case* there was no evidence of parol transfer, but that "in the case before us * * * there is an abundance of testimony that the several grantees took possession of the disputed strip with the rest of the premises, regarding it as conveyed."

The court, therefore, reversed the judgment of the lower court and granted a new trial. The question of acquiescence also arose in *Gildea* v. *Warren, supra,* and the court quoted from *Dupont* v. *Starring,* 42 Mich. 492:

"It has been repeatedly held by this court that a boundary line long treated and acquiesced in as the true line, ought not to be disturbed on new surveys. *Smith* v. *Hamilton,* 20 Mich. 433, 438 (4 Am. Rep. 398); *Joyce* v. *Williams,* 26 Mich. 332. Fifteen years' recognition and acquiescence are ample for this purpose (*Stewart* v. *Carleton,* 31 Mich. 270);

and in view of the great difficulties which often attend the effort to ascertain where the original monuments were planted, the peace of the community requires that all attempts to disturb lines with which the parties concerned have long been satisfied should not be encouraged. *Diehl* v. *Zanger,* 39 Mich. 601.''

See, also, *Renwick* v. *Noggle,* 247 Mich. 150.

The hedge served the same purpose as a line fence and there was also acquiescence in the instant case.

The judgment is reversed, with costs, and the case remanded for judgment for appellants.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.