## WARNER *v.* NOBLE.

1. BOUNDARIES—DESCRIPTION REFERRING TO A PLAT.

    Plats, referred to in a description of real estate, are to be regarded as incorporated in the description.

2. SAME—JURISDICTION—EJECTMENT—TRESPASS—EQUITY.

    A proceeding to determine legal title of a narrow piece of ground between premises of parties is rightly cognizable in an action of ejectment or trespass and without the jurisdiction of a court of chancery; the court of chancery having no inherent jurisdiction to determine boundary lines.

3. SAME—EQUITY—JURISDICTION.

    Equity has no jurisdiction to determine controversy where sole question is the location of boundary line between the parties and jurisdiction of the subject-matter cannot be given by consent, although the matter might be passed upon when incidental to and connected with other issues properly cognizable in a court of equity.

4. COURTS—JURISDICTION.

    The question of jurisdiction may be raised at any time and if want of jurisdiction appears on appeal the Supreme Court is bound to recognize it.

5. ADVERSE POSSESSION—HOSTILITY—INTENTION TO HOLD TO TRUE LINE—MISTAKE.

Possession is not hostile and will not ripen into title by adverse possession where it is up to a fixed boundary under a mistake as to the true line and parties have intention to hold only to the true line.

6. SAME—PERMISSIVE POSSESSION.

Possession which is permissive is not adverse possession.

7. SAME—ELEMENTS.

Possession, to ripen into title by adverse possession, must be actual, visible, open, notorious, exclusive, continuous, uninterrupted for the statutory period, hostile, and under cover of claim of right.

8. BOUNDARIES—MISTAKE—ADVERSE POSSESSION—MUTUAL AGREEMENT—EVIDENCE.

In suit between fee simple owners of two adjacent lots in a recorded plat, which were valuable for recreational and resort purposes, under record showing that both present owners and their respective predecessors claimed title to the true line according to the recorded plat but that a mistake had been made as to location of such line, resulting in plaintiff's actual occupation and corresponding acquiescence by defendants for the statutory period of a triangular parcel and that the mistake was not discovered until resurvey a short while before commencement of suit, evidence *held*, insufficient to support finding that possession was hostile, hence, not adverse, or finding that line located had been mutually agreed upon as the true line in the settlement of any dispute.

9. SAME—ORAL AGREEMENT.

The theory of ownership to an orally agreed boundary proceeds upon the ground there has been a *bona fide* dispute as to the true boundary line and the parties have by peaceful agreement made a friendly settlement of this dispute which has been acquiesced in, carried out and performed by the respective parties.

10. ADVERSE POSSESSION—FRIENDLY SETTLEMENT—ACQUIESCENCE.

The theory of adverse possession is the antithesis of the doctrine of friendly settlement and peaceful acquiescence and proceeds upon the ground of open, notorious, antagonistic acts of unremitting hostility under a claim of right to the claim of rights of the adverse party which is continued for a period of 15 years.

BUTZEL and MCALLISTER, JJ., dissenting.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted June 9, 1938. (Docket No. 65, Calendar No. 40,104.) Decided December 21, 1938.

Bill by Frank J. Warner against Dwight M. Noble and wife to determine a boundary line, for injunction and other relief. Decree for plaintiff. Defendants appeal. Bill dismissed.

*David Anderson, Jr.,* for plaintiff.

*David Anderson, Sr.,* for defendants.

POTTER, J. Plaintiff in chancery had decree against defendants "that plaintiff, Frank J. Warner, is the owner in fee simple of premises in the township of Lawrence, Van Buren county, Michigan, described as: "commencing at a point 25 feet west of the northwest corner of lot 10 Harold E. Abrams Christie Lake subdivision, thence southerly to the southwest corner of said lot 10, thence northerly to the northwest corner of said lot 10, thence west to beginning, being a part of the southeast fractional quarter of section 26, town 3 south, range 15 west; by reason of his distinct, continuous, notorious, hostile, visible and actual possession of said premises for more than 15 years;" that defendants forthwith quitclaim and release unto plaintiff all their apparent right, title and interest in and to the above described premises, and, in default thereof, plaintiff have leave to record a copy of the decree to operate as such quitclaim or release; that the apparent right or interest of defendants to the above described premises was null, void, and of no force and effect as against the rights of plaintiff. From this decree, defendants appeal claiming the trial court erred in holding plaintiff was the owner of the real estate in

dispute by adverse possession; in holding as above indicated that defendants' interests in the disputed premises were null and void; in not deciding the disputed territory was defendants' property; and in not dismissing plaintiff's bill of complaint.

1. The bill of complaint alleges that plaintiff's land is described as lot 10, Harold E. Abrams subdivision, section 26, town 3 south, range 15 west, according to the recorded plat thereof. It alleges that defendants are the owners of lot 11 of Harold E. Abrams Christie Lake subdivision, section 26, town 3 south, range 15 west, Van Buren county, Michigan, according to the recorded plat thereof. It alleges defendants lay claim to a part of lot 10 and trespass thereon, and the bill asks for an injunction restraining defendants from entering upon lot 10, or removing or carrying away dirt, earth or other materials, et cetera, and from interfering with or encroaching upon plaintiff's peaceful possession of lot 10.

Defendants admit plaintiff is the owner of lot 10 and that they are the owners of lot 11 according to the recorded plat thereof.

In their answer to the original bill of complaint, defendants waived all technicalities and averred they desired a final and binding determination upon the merits as to the true location of the line between lots 10 and 11. Plaintiff then amended the bill of complaint, claiming by adverse possession the premises described in the decree for the statutory period. Plaintiff included in his amended bill of complaint a paragraph which incorporates each and every allegation contained in the original bill of complaint therein. Defendants answered the amendment to the bill of complaint to plaintiff and in that answer there is no attempt to stipulate as to the jurisdiction of the court.

Where plats are referred to in a description of real estate, they are to be regarded as incorporated into the description. *McEvoy* v. *Loyd,* 31 Wis. 142; *Boehner* v. *Hirtle,* 46 N. S. 231; *Wilson* v. *Chicago Lumber & Timber Co.,* 74 C. C. A. 529 (143 Fed. 705); 9 C. J. pp. 220, 221.

2. There is no conflict as to the record title; no cloud upon title sought to be removed. No conveyances are asked to be modified or cancelled. There is no dispute here, except where the true boundary line is between the premises of plaintiff and defendants. According to the recorded plat, defendants are occupying only that to which they have title. Plaintiff claims he is entitled to a part of lot 11 according to the recorded plat thereof.

When the true location of the boundary line between the premises of the parties is settled, that ends the matter. Under such circumstances, a court of chancery has no jurisdiction.

"The substantial controversy is merely a difference about the legal ownership of a narrow piece of ground, and is rightly cognizable at law." *Wykes* v. *Ringleberg,* 49 Mich. 567.

The fundamental dispute is about the correct position of the line between lots 10 and 11. When that is once settled, there can remain no semblance of claim or cloud to be passed on and the issue on that particular question is one regularly triable at law. *Kilgannon* v. *Jenkinson,* 51 Mich. 240. Ejectment is the proper remedy. *Drake* v. *Happ,* 92 Mich. 580. The rule is settled by repeated adjudications that the equity court has no inherent jurisdiction to determine boundary lines. *Dolan* v. *Smith,* 147 Mich. 276. The bill of complaint describes plaintiff's land according to the recorded plat thereof. It avers plaintiff's ownership. It avers that defendants are the

owners of lot 11 according to the recorded plat thereof. It alleges defendants are asserting ownership to a part of lot 10. Under such averments, equity has no jurisdiction and the rights of the parties should be determined by suit at law in ejectment. *Kilgannon* v. *Jenkinson, supra; Nicholls* v. *Boyne City Lumber Co.,* 157 Mich. 234.

"While it is recognized that courts of equity may pass upon a disputed boundary when incidental to and connected with other issues properly coming under some recognized head of equity jurisprudence, the rule is well settled that equity courts have no inherent and independent jurisdiction to determine the true location of disputed boundaries. * * * Ejectment and trespass are the customary, and ordinarily adequate, remedies at law by which disputed boundaries are settled." *Weissert* v. *Fuller,* 188 Mich. 327.

"Where, as here, the sole question in dispute is the location of the true boundary line between parcels of land, the title to which is not involved, equity has no jurisdiction. The controversy is a legal one to be determined in an action at law." *Argus* v. *Johns,* 243 Mich. 595.

Under the facts as disclosed by the testimony, equity has no jurisdiction and the bill of complaint should be dismissed. Jurisdiction of the subject-matter cannot be given by consent. *Allen* v. *Carpenter,* 15 Mich. 25; *Kirkwood* v. *Hoxie,* 95 Mich. 62 (35 Am. St. Rep. 549); *Hull* v. *Hull,* 149 Mich. 500; *Maslen* v. *Anderson,* 163 Mich. 477; *People* v. *Meloche,* 186 Mich. 536; *Carpenter* v. *Dennison,* 208 Mich. 441; 17 Am. & Eng. Enc. of Law (2d Ed.), p. 1060. The question of jurisdiction may be raised at any time, *Greenvault* v. *Farmers' & Mechanics' Bank of Michigan,* 2 Doug. (Mich.) 498; *Farrand* v. *Bentley,* 6 Mich. 281; *Attorney General, ex rel. Lockwood,* v. *Moliter,*

26 Mich. 444; *Adams* v. *Hubbard*, 30 Mich. 104; *Woodruff* v. *Ives*, 34 Mich. 320; *Horton* v. *Howard*, 79 Mich. 642 (19 Am. St. Rep. 198); *Tromble* v. *Hoffman*, 130 Mich. 676; *Attorney General, ex rel. Wolverine Fish Co.*, v. *A. Booth & Co.*, 143 Mich. 89; and if want of jurisdiction appears this court is bound to recognize it. *Mansfield, Coldwater & Lake Michigan R. Co.* v. *Swan*, 111 U. S. 379 (4 Sup. Ct. 510); *Morris* v. *Gilmer*, 129 U. S. 315 (9 Sup. Ct. 289); 15 C. J. p. 852.

3. The proof in this case shows that when the houses were built upon lots 10 and 11, there was no survey of the premises, that the carpenter went on the premises and built the houses on what he supposed to be the respective lots. There was no claim by either party that they owned anything except the lots mentioned and described in their respective deeds according to the recorded plat thereof. There was no claim and no intention to claim upon the part of either party anything except the lots and premises which they had acquired by deed and to assert title to the true line between the premises.

Where the possession is up to a fixed boundary under a mistake as to the true line and the intention of the parties is to hold only to the true line, such possession is not hostile and will not ripen into title, 2 C. J. S. pp. 519, 632; and where the element of hostility is absent, there can be no adverse title acquired. 2 C. J. S. p. 568. Nor is possession which is permissive adverse possession. 2 C. J. S. p. 624. The possession must be actual, visible, open, notorious, exclusive, continuous, uninterrupted for the statutory period, hostile, and under cover of claim of right. 2 C. J. S. p. 520.

The trial court held that though the parties may have been mistaken as to the true line, plaintiff took

possession of the disputed strip, erected a cottage, assumed such control and use of the premises as was consistent with the character of the property, used it for the purpose for which it was adapted, believed it to be his own, a belief shared by Thompson and acquiesced in by defendants until 1932, and he has held adversely for 15 years and, therefore, has title by adverse possession.

There was no mutual agreement as to the true boundary line, nor was there ever any adverse or hostile holding. The land in question was surveyed and platted and the parties claimed and plaintiff by his bill of complaint claims according to the recorded plat thereof. The corners of the lots were marked by iron stakes. The land was otherwise uninclosed, but was valuable for recreational and resort purposes. Before the parties built their cottages they sighted from one stake to another and thought the line which they sighted was the correct one. It is undisputed they sighted through from the wrong stake on the plat and as a result thought the line was where it was not. There was no mutual agreement between the parties that this was the line. There was no concession by one to the other that the disputed strip belonged to one party or the other. Each of the owners claimed to the true line. The predecessors in title of defendants claimed to the true line. The fact seems to be undisputed that plaintiff and defendants' predecessor in title made a mistake in locating the line and that they did not ascertain where the true line was until they had the plat surveyed and monuments in the ground located and determined that defendants did not have the land which they bought and paid for, that they did not have possession of the whole of lot 11 according to the recorded plat thereof. Under such a state of facts,

there was no hostility between the claims of the respective parties by which a finding of adverse possession may be sustained.

The basis of the rule that boundaries may be fixed by verbal agreement, long acquiesced in, and the theory of acquiring title by adverse possession are diametrically opposed to each other. The theory of ownership to an agreed boundary proceeds upon the ground there has been a *bona fide* dispute as to the true boundary line and the parties have by peaceful agreement made a friendly settlement of this dispute which has been acquiesced in, carried out and performed by the respective parties. The theory of adverse possession is the antithesis of the doctrine of friendly settlement and peaceful acquiescence. It proceeds upon the ground of open, notorious, antagonistic acts of unremitting hostility under a claim of right to the claim of rights of the adverse party. And it must be continued for a period of 15 years. It does not appear that the situation of the parties hereto, as disclosed by the testimony, warrants a decree for plaintiff on the basis of title acquired by adverse possession.

The bill of complaint is dismissed, with costs.

Wiest, C. J., and Bushnell, Sharpe, Chandler, and North, JJ., concurred with Potter, J.

McAllister, J. (*dissenting*). This action arises out of a dispute over a boundary line between two lots. Frank Thompson purchased a lot in a subdivision in 1919, and he and his wife thereafter conveyed the same to defendants in 1929. Plaintiff had purchased the adjoining lot in 1920. All of the foregoing parties have agreed on a certain line, as the boundary between the lots, and during approximately 12 years, plaintiff had held the property up to

such line with the consent and without any objection or question on the part of these adjoining owners. After such period of agreement, defendants caused a survey to be made, which showed that plaintiff's house stands partially upon the land owned by defendants, as described by their deed. The defendants' predecessor in title and plaintiff had previously built a wall on what they supposed, and had agreed upon, to be the boundary line, but which in fact is located on defendants' property, according to the description in the deed.

Plaintiff filed this bill to restrain defendants from interfering with plaintiff's rights to take water from the well and also for the purpose of securing a decree confirming the line agreed upon by the parties as the boundary between the lots.

After Thompson, from whom defendants purchased their lot, built the cottage now owned by defendants, he and the plaintiff agreed on a line which they thought was the dividing line between the lots. Thereafter, in 1920, plaintiff Warner erected a cottage on what the parties supposed was his property, but which, in fact, projected onto the property of Thompson, for a distance of approximately seven feet on the north end and three feet on the south end of the cottage. Thereafter when defendants purchased from Thompson they believed that Warner owned the land upon which plaintiff's cottage was erected. In fact, defendants sought and obtained permission in 1929 or 1930 from plaintiff Warner to build a fireplace chimney which they thought would encroach on the land, the ownership of which all parties supposed to be in Warner; and acquiescence by all parties continued in the supposed lot line until 1932 when defendants caused the property to be surveyed.

In 1933, defendant advised plaintiff and his wife that plaintiff's house was on defendants' property. In this conversation plaintiff told defendant that while defendant might be right in his belief, plaintiff did not agree. Defendant then advised plaintiff that he would do nothing about the matter as long as there was no change of ownership in the lots owned by plaintiff and defendants.

He further testified that, at the time, he requested plaintiff to move an out-house from the disputed strip and that plaintiff replied that he was going to move it anyway, which he afterward did. Plaintiff, however, denies that defendant ever asked him to move such building.

In the same year of 1933, defendant widened the pathway around his house on the disputed strip of land and banked it with cobblestones. Previously, in 1932, defendant had dug a trench about seven feet wide on the disputed property in order to keep water from draining into his basement. Later, in 1935, defendant laid tile adjacent to the footings of the foundation and after filling in the excavation, caused the excess dirt to be thrown upon the disputed property. In 1936, defendant hired a landscape gardener and brought in approximately 20 loads of black earth which he spread over the disputed property and caused trees and shrubs to be planted.

During 1935 and 1936, plaintiff rented his property to defendant's brother-in-law, and claims that the first knowledge he had of any landscaping was in the fall of 1936 when defendant's brother-in-law brought him the keys after having leased the cottage for the season, and told him that defendant was landscaping the property. Plaintiff denies that defendant ever asked him to have the out-house moved from the disputed strip of land and further testified that since the time he purchased the lot and built the cottage he

had claimed to own the land up to the line agreed upon between him and Thompson.

In May, 1937, plaintiff filed his bill of complaint for an injunction and for a decree requiring defendants to quitclaim and release to plaintiff any interest which they assert in the property and which the plaintiff claims he has held adversely for a period of. more than 15 years, and he also claims title by acquiescence.

The circuit court entered a decree granting plaintiff the relief sought, and defendants appeal on the ground that the court erred in finding that plaintiff acquired title to the disputed property by acquiescence and adverse possession.

As a general rule, acquiescence in a line fixed by oral agreement need not be for the full statutory period required in cases of adverse possession; acquiescence for a reasonable period short of that time may be conclusive. 8 Am. Jur. p. 799.

In *Smith* v. *Hamilton*, 20 Mich. 433, 438 (4 Am. Rep. 398), the court said:

"It has been held very generally, that when there has been an honest difficulty in determining the lines between two neighboring proprietors, and they have actually agreed by parol upon a certain boundary as the true one, and have occupied accordingly with visible monuments or divisions, the agreement long acquiesced in shall not be disturbed, although the time has not been sufficient to establish an adverse possession. Where the transaction has not been such as to amount merely to an honest attempt to determine a doubtful line, the authorities have not permitted an agreement to stand which would operate as a violation of the statute of frauds. But where the parties have only tried to find the true boundary, it has been held that the statute was not infringed, and the line was fixed by acquiescence."

"It has been frequently held in this State that where parties by mutual agreement, and for that express purpose, meet and fix a boundary line and thereafter acquiesce in the line so established between them, such line shall be considered the true line between them, notwithstanding the period of such acquiescence falls short of the time fixed by the statute of limitations for gaining title by adverse possession." *Jones* v. *Pashby,* 67 Mich. 459 (11 Am. St. Rep. 589).

The rule set forth in the above citations, however, is subject to qualification. If the owners be in doubt as to the true boundary line, neither assuming to know its location, and thereupon agree to fix a line as the boundary, notwithstanding they may have been mistaken as to the true line, such agreed line is to be given effect. If, however, the parties undertake by parol agreement to fix the boundary line under the belief that they are fixing the true boundary line, when in fact it is not, their agreement is not binding and may be set aside by either party on the discovery of the mistake, unless there is some element of estoppel which would prevent them from doing so. 8 Am. Jur. p. 800; *Blank* v. *Ambs,* 260 Mich. 589; *Bemis* v. *Bradley,* 126 Me. 462 (139 Atl. 593, 69 A. L. R. 1399).

We are of opinion that plaintiff has not sustained the burden of proof showing title to this disputed strip of land by acquiescence through agreement with the adjoining owners as to the boundary. From the evidence, it appears that such boundary line may have been agreed upon by the parties, believing it to be the true line.

However, we agree that plaintiff has clearly established title by adverse possession. Plaintiff built his cottage on the disputed strip in 1920 and his erection and occupancy of the building was the most

open, notorious and hostile possession possible. *Elkhorn Coal Corp.* v. *Bradley,* 216 Ky. 599 (288 S. W. 326).

Although there is a presumption that defendant entering land under color of title claims all of the land covered by his deed, such presumption is rebutted by proof that, although he is in actual possession of part of the land, he does not claim possession or ownership beyond a certain line. *Haddock* v. *Leary,* 148 N. C. 378 (62 S. E. 426).

The period of adverse possession, therefore, began with plaintiff's building of his cottage in 1920 on the disputed property, under claim of right growing out of the agreement as to the boundary line between plaintiff and defendants' predecessor in title.

While a holding of property up to an agreed line, which the parties mistakenly assumed was the true property line, does not ordinarily ripen into title by acquiescence, nevertheless a holding of such property for the statutory period, even though it be by a mutual mistaken assumption as to the true boundary line, does give title by adverse possession if the necessary legal requisites for such possession exist.

The great weight of authority is to the effect that an open, notorious and hostile possession of property for the statutory limitation period is sufficient for the acquisition of title by adverse possession, and the fact that the possession was taken under a mistake as to boundary lines is immaterial. *Preble* v. *Railroad Co.,* 85 Me. 260 (27 Atl. 149, 21 L. R. A. 829, 35 Am. St. Rep. 366). Such rule is, however, predicated upon the intention of the party to claim adversely, as well as his possession for the statutory period. Possession beyond a boundary line under mistake as to the true line but with an intent to appropriate is adverse. *Fredericksen* v. *Henke,* 167 Minn. 356 (206 N. W. 257, 46 A. L. R. 785).

It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title that fixes the character of the entry and determines whether the possession is adverse. *Edwards* v. *Fleming,* 83 Kan. 653 (112 Pac. 836, 33 L. R. A. [N. S.] 923).

Where a fence has been treated and acquiesced in as the correct boundary line between adjacent owners for 15 years, the boundary line ought not to be disturbed even if there were some variance from the true line. *Bunde* v. *Finley,* 224 Mich. 634.

"The original survey may have been inaccurate, its lines may not correctly and accurately fix the boundary but if they have been acquiesced in for a sufficient length of time, they fix the 'true line' as matter of fact and as matter of law." *Hanlon* v. *TenHove,* 235 Mich. 227 (46 A. L. R. 788).

When adverse possession is once shown, it is generally presumed to continue, this being an application of the general presumption that a certain condition or state of a continuing nature, once shown to exist, will continue to exist. *McDaniels* v. *Cutburth* (Mo.), 270 S. W. 353; 2 C. J. S. p. 825.

Such adverse possession having once been established the burden of proof is upon defendant to show an act sufficient in law to break such adverse possession. A mere physical entry by the owner is not enough, and, in order to defeat another's adverse possession, the owner's entry must clearly indicate to the occupant that his possession is invalid and his right challenged. Such entry must be open and notorious and under a claim of right and must bear upon its face an unequivocal intention to take possession. *Smith* v. *Railway Co.,* 1 Cal. (2d) 272 (34 Pac. [2d] 713); *Nelson* v. *Johnson,* 189 Ky. 815 (226 S. W. 94); and the entry by an owner to break the

period of adverse possession must be made under such circumstances that by the use of reasonable diligence, the occupant may ascertain the right and claim of the entrant. It must indicate to the occupant that possession is invaded and that the right to possession is challenged. Entries such as for purposes of cutting timber or mere trespasses with force are not enough to break the period of adverse possession. *Bonebrake* v. *Flourney,* 133 Okla. 101 (271 Pac. 658) ; *Home Land Co.* v. *Nye,* 93 Pa. Super. 452. The entry must be equal in dignity and character to that required to initiate adverse possession. *Smith* v. *Railway Co., supra.* It cannot be merely accidental, casual, secret or permissive. *Bonebrake* v. *Flourney, supra.* Mere verbal protests or statements by the owner, which are short of disturbing or interrupting the exercise of the rights claimed by the adverse occupant, are ineffectual to stop the running of the statute of limitations. 2 C. J. S. p. 706. A mere denying or disputing by the owner of the right of adverse occupant, or making of verbal claims in himself will not interrupt the adverse possession. *Cox* v. *Clough,* 70 Cal. 345 (11 Pac. 732) ; *Illinois Steel Co.* v. *Kohnke,* 151 Wis. 410 (138 N. W. 995).

Plaintiff commencing with a holding by adverse possession in 1920 for a period of more than 15 years is presumed to have claimed the land in controversy adversely for a period of more than 15 years.

Defendant's claim that he excavated in the disputed property for the purpose of draining his land and that he caused the excess earth to be thrown on the disputed strip is not, under the circumstances, such an assertion of right and an invasion of possession as will break the statutory period. Plaintiff had previously given defendant permission to build a chimney on the disputed strip and in a neighborly

spirit had told him that the land was not valuable and that it would not be necessary for defendant to secure any written rights. It would have been surprising in view of this circumstance if plaintiff had objected to having earth thrown on the disputed strip as a result of defendants' attempt to avoid the flow of surface water into his basement. The spreading of the black earth on the disputed strip and the landscaping by defendant was not brought to plaintiff's attention, and accordingly could not be said to be any open assertion of right in the property. When defendant first mentioned to plaintiff that the line upon which the parties had previously agreed was erroneous, plaintiff disagreed in his contention, and defendant stated that he would do nothing about it as long as the lots did not change hands. This was insufficient to constitute such an invasion of possession or assertion of right as would break the running of the statutory period for adverse possession.

Because of defendants' failure to sustain the burden of proof to show that such period was broken by his entry upon the property, the decree of the trial court confirming plaintiff in the land so held by adverse possession and enjoining defendant from interference with plaintiff's rights in the well, should be affirmed, with costs to plaintiff.

BUTZEL, J., concurred with MCALLISTER, J.