MARY *v.* MAURER.

1. ADVERSE POSSESSION—TITLE—MISTAKE—BOUNDARIES.

One may gain title to property by adverse possession even though through an innocent mistake in setting out the boundaries.

2. SAME—EVIDENCE.

Evidence, adduced in suit to enjoin encroachment upon 8-1/4′ x 33′ strip of land to which plaintiff had record title, *held,* sufficient to establish requisites of adverse possession by defendant and her predecessors, where it appears that for well over 20 years they had openly occupied the strip in various ways continuously, no one, including plaintiff, had claimed they were trespassing, and plaintiff had even disclaimed ownership thereof.

3. SAME—TACKING OF SUCCESSIVE POSSESSIONS OF DEFENDANT AND PREDECESSORS.

Defendant, claiming title to 8-1/4′ x 33′ strip of land at end of her lot which she had owned for 5 years was entitled to tack her period of adverse possession to that of her predecessors in title, where it appears that defendant and her predecessors did take possession of the strip in the belief that it was theirs, that no objections or adverse claims were made thereto by plaintiffs or their predecessors and that predecessors had used the strip openly in such a manner as to clearly indicate to where they claimed possession and did take possession of the disputed strip with the rest of the premises, regarding it as conveyed to them.

4. SAME—TACKING—POINTING OUT OF LIMITS.

Tacking of adverse possessions is permitted, where successive grantees over a period of 15 years had the claimed limits of the lots first pointed out to them and possession given with the deed and all regard the disputed strip as conveyed by deed of adjoining land.

Appeal from Ingham; Coash (Louis J.), J. Submitted January 7, 1954. (Docket No. 23, Calendar No. 45,835.) Decided February 18, 1954.

REFERENCES FOR POINTS IN HEADNOTES
[2] 1 Am Jur, Adverse Possession § 126 *et seq.*
[3, 4] 1 Am Jur, Adverse Possession § 151 *et seq.*

Bill by Alvah R. Mary and B. Pearl Mary against Margreat K. Maurer to enjoin encroachment. Cross bill praying determination of ownership. Decree for defendant. Plaintiff appeals. Affirmed.

*Hammond & Schram,* for plaintiffs.

*Roy T. Conley,* for defendant.

DETHMERS, J. Plaintiffs filed a bill of complaint seeking to enjoin defendant from using or interfering with plaintiffs' use of a strip of land 8–1/4 feet wide by 33 feet long. The strip is included within the legal description of property to which plaintiffs hold record title and is immediately adjacent to the north end of a lot owned and occupied by defendant. Filing a cross bill praying that she be decreed to be the owner thereof, defendant claims title by adverse possession and asks that plaintiffs be enjoined from trespassing thereon. From decree for defendant, plaintiffs appeal.

The testimony of plaintiff Alvah R. Mary conflicts with that of defendant and her witnesses with respect to the facts concerning adverse possession. Having had the opportunity, as we do not, to hear and observe the demeanor of the witnesses, the trial judge believed the defense's version. The bare record does not persuade us that he was wrong in so doing and accordingly we assume and find the pertinent facts, as found by the trial judge and disputed in part by plaintiffs, to be as follows: Defendant acquired title to her lot in June of 1947 from Agnes A. Moran, by a warranty deed which described it, in effect, as being 2 rods east and west by 4 rods north and south. It had been devised to Agnes Moran by the will of her brother, Edward D. Moran, who died in January, 1939. He had bought it in 1919, on a contract, from Peter Briggs, whose vendor's interest thereafter

descended to Julia A. Briggs and she conveyed to
Moran in fulfillment of the contract in April, 1934.
The Morans lived together as brother and sister and
occupied the premises from April, 1920, until Edward's death, whereupon Agnes continued in occupancy until October, 1939, after which it was continuously occupied by her tenant until she sold it to
the defendant, who has occupied it ever since. In
1928 Edward Moran deeded to the city the south
8-1/4 feet of his lot, which long theretofore had and
ever since has been used as the north half of a street.
An old rusty stake was located at the northwest corner of the disputed strip and had been there for
years. The realtor who negotiated the sale to defendant told her that it was 66 feet north of the
street line. In 1930 Moran placed a clothespole and
a clothesline between it and a tree, all 3 located on
the strip, and the Morans always used it for laundry
purposes while they lived there. During that entire
time no one else used the clothesline or the strip or
made any claim of owning it and the Morans always
kept it mowed. Miss Moran testified that she had
always assumed that the strip was included in what
they owned and that they had always used it as such.
Julia Briggs testified that there had never been any
trouble between the Briggs and Moran families about
it. After Miss Moran moved from the premises her
tenant continued to use the clothesline and to keep
the lawn on the strip in order and kept a dog and
doghouse on it. During the tenant's occupancy no
one else used the strip, claimed to own it or asserted
that the tenant was trespassing thereon. The mentioned stake was pointed out to defendant by Miss
Moran and her realtor before defendant bought the
premises and she was told that it was her corner
stake; and when she bought she believed she was buying a lot extending from the north street line for a
distance of 4 rods north to the stake, thus including

the strip as hers. She continued the use thereof, kept up the lawn on it and maintained control over it as done by her predecessors. In 1947 Alvah Mary mentioned a tree on the strip to defendant, called it a nuisance and asked her why she did not cut it down; he said nothing about it or the clothesline being on his property. At that time he asked defendant where her stake was, she showed him the above-mentioned stake and he made no claim that it was on his property. Months later he again mentioned the tree to defendant and asked, "Why don't you cut it down, it ought to be out of there?" She replied, "It is the only shade I have." And he answered, "Well, if it were mine, I would cut it down." In 1946 defendant overheard a conversation between him and his tenant, who lived adjacent to defendant's property. The tenant asked for permission to put a garden back of defendant's house, apparently referring in part to the disputed strip, and plaintiff Alvah Mary refused, stating that "the land did not belong to him."

We agree with the trial judge that such facts, if true, are sufficient to establish the requisites of adverse possession by defendant and her predecessors.

Plaintiffs urge that defendant may not tack the period of her adverse possession, consisting of but 5 years up to time when suit was commenced in November, 1951, to that of her predecessors so as to establish a combined total period of adverse possession in excess of 15 years, inasmuch as the strip was not included either in the description in the deed to defendant from Agnes Moran or in any conveyance to the latter from her brother, Edward, and because, as plaintiffs say, there had been no parol transfer thereof from the one to the other in either instance. In holding for the defendant in this respect the trial court relied on *Gregory* v. *Thorrez,* 277 Mich 197, 199, 201. We there said:

"Appellees contend that the possession of Braund and appellants is not adverse because their claim to the strip was based on the mistaken belief that it was included in the description in the deeds. We have held, however, that one may gain title to property by adverse possession even though through an innocent mistake in setting out the boundaries. 97 ALR 14; *Greene* v. *Anglemire,* 77 Mich 168; *Gould* v. *Fiero,* 262 Mich 467. * * *

"The main question for our determination is whether the appellant Thorrez may tack to his possession the adverse occupancy of his predecessors in title so as to make out the statutory period without having the disputed strip described in his deed. Numerous cases in Michigan have laid down the general rule that successive possessions may not be tacked where the disputed land is not described in the deed. *Lake Shore & M. S. R. Co.* v. *Sterling,* 189 Mich 366; *Hanlon* v. *Ten Hove,* 235 Mich 227 (46 ALR 788); *Jeffries* v. *Sheehan,* 242 Mich 167. These cases, however, do not consider the question of whether tacking is permitted where successive grantees over a period of 15 years had the lots first pointed out to them and possession given with the deed. * * *

"We believe, however, the law of Michigan was clearly established in *Gildea* v. *Warren,* 173 Mich 28 (not referred to in the briefs), where again it was the claim of plaintiff that her house was built where it then stood more than 50 years ago and that the strip of land in controversy had been occupied as part of the yard surrounding the residence for more than 30 years, but the date of her deed showed that her own possession did not continue for 15 years. The lower court directed a verdict (for defendant) based on *Sheldon* v. *Railroad Co.,* 161 Mich 503. On appeal, the Supreme Court pointed out that in the *Sheldon Case* there was no evidence of parol transfer, but that 'in the case before us * * * there is an abundance of testimony that the several grantees took possession of the disputed strip with the rest of the premises, regarding it as conveyed.'

"The Court, therefore, reversed the judgment of the lower court and granted a new trial."

Plaintiffs seek to distinguish this case from *Gregory* on the ground that there was here (a) no acquiescence in the wrong boundary by both parties, (b) no pointing.out of the wrong line by the successive grantors in defendant's chain of title, and (c) no taking, by the successive grantees, of possession of the disputed strip with the rest of the premises, regarding it as conveyed. The proofs accepted as true show that (a) defendant and her predecessors did take possession of the strip in the belief that it was theirs and that no objections or adverse claims were voiced thereto by plaintiffs or their predecessors, thus indicating acquiescence; (b) that the line and stake were pointed out by Miss Moran and her realtor to defendant, at the time of her purchase, indicating that the strip was included; and that during the years of occupancy by the Morans, Edward used and treated the strip as his own, in a manner equivalent to and constituting as effective a pointing out of the boundary line in connection with his devise to his sister as it would have been had he pointed out the line at the time of conveying the lot to her; (c) that defendant and Miss Moran did take possession of the disputed strip with the rest of the premises, regarding it as conveyed to them. The *Gregory Case* is applicable and controlling here.

Affirmed, with costs to defendant.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and KELLY, JJ., concurred.