## CONNELLY v BUCKINGHAM

Docket No. 70615. Submitted January 12, 1984, at Detroit.—Decided August 6, 1984. Leave to appeal applied for.

Edward B. Connelly brought an action in the Macomb Circuit Court against James and Barbara Buckingham and Rodimer and Laura Seklock to quiet title to a certain piece of property. Defendants counterclaimed, alleging title by adverse possession. Plaintiff purchased a tract of land which had on it a fence cutting off approximately 40 feet from the northeast corner. The Buckinghams and their predecessors in interest, the Seklocks, had used and improved the disputed land up the fence line for approximately 20 years prior to suit, believing it to be owned by them. The court, Kenneth N. Sanborn, J., granted judgment for defendants. Plaintiff appealed. *Held:*

1. A suit to quiet title is equitable in nature and subject to *de novo* review, but the Court of Appeals will give great weight to the findings of fact made by the trial court and will not disturb those findings unless convinced it would have reached a different result had it been in the trial court's position.

2. Adverse possession of land must be established by clear and cogent proof of actual, visible, open, notorious, exclusive, continuous, uninterrupted, hostile possession under a claim of right for the statutory period of 15 years. Possession is hostile where it manifests an intent to claim title to a visible, recognizable boundary, regardless of the boundary line.

3. An adverse claimant may add his predecessor's period of possession to his own where he can establish privity of estate by mention of the disputed lands in the instrument of conveyance or by parol references to the disputed lands at the time of conveyance. Privity of estate was shown by testimony of defendants to the effect that both the Seklocks and the Buckinghams

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 145.

5 Am Jur 2d, Appeal and Error §§ 822, 839.

[2, 3] 3 Am Jur 2d, Adverse Possession §§ 32-35, 47-57.

[3] 3 Am Jur 2d, Adverse Possession §§ 58-67.

Tacking adverse possession of area not within description of deed or contract. 17 ALR2d 1128.

understood the disputed property to be part of the Seklock land at the time the property was sold to the Buckinghams.

Affirmed.

1. QUIETING TITLE — APPEAL — FINDINGS OF FACT.

A suit to quiet title is equitable in nature and subject to *de novo* review, but the Court of Appeals will give great weight to the findings of fact made by the trial court and will not disturb those findings unless convinced it would have reached a different result had it been in the trial court's position.

2. ADVERSE POSSESSION — EVIDENCE — HOSTILE POSSESSION.

Adverse possession of land must be established by clear and cogent proof of actual, visible, open, notorious, exclusive, continuous, uninterrupted, hostile possession under a claim of right for the statutory period of 15 years; possession is hostile where it manifests an intent to claim title to a visible, recognizable boundary, regardless of the boundary line (MCL 600.5801[4]; MSA 27A.5801[4]).

3. ADVERSE POSSESSION — PERIOD OF POSSESSION — TACKING.

An adverse claimant may add his predecessor's period of possession to his own where he can establish privity of estate by mention of the disputed lands in the instrument of conveyance or by parol references to the disputed lands at the time of conveyance.

*Thomas S. Halpin, P.C.* (by *Thomas S. Halpin*), for plaintiff.

*Robert E. Caron,* for defendants Buckingham.

*Richard E. Rosin,* for defendants Seklock.

Before: WAHLS, P.J., and R. M. MAHER and C. W. SIMON, JR.,* JJ.

WAHLS, P.J. This case presents a classic boundary line dispute, the law of which is seldom reviewed today except by students of rudimentary property law. The plaintiff filed a complaint to quiet title to a disputed stretch of land, an area of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

approximately 627 square feet. As depicted in the diagram at the end of this opinion, the disputed property is triangular in shape. It lies to the northeast of the plaintiff's property, and to the southwest corner of the tract of land owned by the defendants James and Barbara Buckingham. The Clinton River bounds all of the property of the parties to the northwest. The plaintiff brings this appeal as of right from the judgment of the trial court which found that the defendants acquired title to the disputed land by adverse possession.

At trial, both plaintiff and the Buckinghams claimed title to the disputed land through their predecessors-in-interest. The plaintiff, who acquired his property in 1979, based his claim to the disputed land on the legal description contained in his deed. Plaintiff testified that he inspected the property before purchasing it and found a fence cutting approximately 40 feet off the northeast corner of the tract, which borders on the Buckingham property and the Clinton River. When the sellers indicated to plaintiff that they had not previously conveyed any portion of their property, plaintiff had the property surveyed. The survey showed that the disputed section was within the legal description of the property purchased by plaintiff.

The defendants Buckingham and Seklock based their claim to the disputed land on the theory of adverse possession. The Seklocks owned the Buckingham property prior to the Buckinghams' purchase of the property in 1969. The Seklocks acquired the property in 1959. Rodimer Seklock testified that both the disputed fence and the boatwells were present at the time he purchased the property. Seklock's understanding was that the property he was purchasing extended west to

the fence and included the disputed section of property. The Seklocks used the disputed section of property continuously from 1959 until they sold their property to the Buckinghams in 1969. The Seklocks made numerous improvements to the section, which included replacing the seawall, refurbishing the boatwells, and landscaping the grounds. In 1965 they replaced the fence. The plaintiff's predecessors were the adjoining owners during this time. The Seklocks had no disputes with the plaintiff's vendor over the property line. In fact, plaintiff's vendor attended a meeting at which Rodimer Seklock's plan to replace the seawall was approved.

In 1969, the Buckinghams purchased the Seklocks' property on a land contract. The Seklocks still hold legal title to the property. When the Buckinghams purchased the property, it was fully enclosed by fencing. Rodimer Seklock indicated to the Buckinghams that their property was within the fenced-in portion. The Buckinghams made continued improvements on the disputed property, under the understanding that it belonged to them. James Buckingham testified that it had always been his intention just to possess the property up to his true boundary line and he never intended to possess any property that belonged to the plaintiff. An adjacent landowner testified that the fence which separated the disputed section from the plaintiff's land had been there since before 1952.

Based upon this testimony, the trial court found that title vested in the Buckinghams by adverse possession. The trial judge allowed the 10-year period of possession by the Seklocks to be tacked onto the 11-year period of possession by the Buckinghams so that the 15-year statutory period was satisfied, MCL 600.5801; MSA 27A.5801.

After entry of judgment, plaintiff filed a motion to amend the judgment pursuant to the court rule, GCR 1963, 527. He argued that the trial judge had misapplied the law in Michigan on adverse possession. Both defendants Buckingham and Seklock testified repeatedly that their intention was to hold and possess their property to the true line. The plaintiff contended that the defendants lacked the necessary adverseness, hostility, and intention to claim title to the disputed section. Plaintiff relied upon the following language by the Supreme Court in *Warner v Noble,* 286 Mich 654, 660; 282 NW 855 (1938):

"Where the possession is up to a fixed boundary under a mistake as to the true line and the intention of the parties is to hold only to the true line, such possession is not hostile and will not ripen into title, and where the element of hostility is absent, there can be no adverse title acquired." (Citation omitted.)

The trial judge denied plaintiff's motion. The trial judge relied, as he had in his earlier opinion, on the language adopted by this Court in *Mumrow v Riddle,* 67 Mich App 693, 698; 242 NW2d 489 (1976):

"The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will. Nor is the claimant required to make express declarations of adverse intent during the prescriptive period. Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder." (Citations omitted.)

The judge's opinion concluded in pertinent part:

"Accordingly, this Court will not disturb the conclu-

sion of its prior opinion. While the authority cited by plaintiffs is sound, it is not quite as controlling as they believe it to be. This Court must examine the entire record before it, and that record indicates that through occupation, use, mistaken belief, and acquiescence, defendants Buckinghams in conjunction with the period of occupation tacked on by defendants Seklocks, have indeed acquired title by adverse possession. Until a higher court sees fit to define 'hostile' in a manner which encompasses the *Warner* and *Mumrow* definitions, this Court chooses to apply the more recent standard."

On appeal, the plaintiff raises the following arguments: 1. under Michigan law the defendants cannot establish title by adverse possession when their possession was not hostile; and 2. the ten-year period of possession by the Seklocks cannot be tacked onto the Buckinghams' possession because there existed no privity of estate between the defendants.

I

A suit to quiet title is equitable in nature and subject to *de novo* review. However, this Court will give great weight to the findings of fact made by the trial court and will not disturb those findings unless convinced that it would have reached a different result had it been in the position of the lower court. *De Hollander v Holwerda Greenhouses,* 45 Mich App 564, 566; 207 NW2d 187 (1973); *Corrigan v Miller,* 96 Mich App 205, 208; 292 NW2d 181 (1980).

In Michigan, adverse possession must be "established by clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of 15 years, hostile and under cover of a claim of

right". *Burns v Foster,* 348 Mich 8, 14; 81 NW2d 386 (1957); *Rose v Fuller,* 21 Mich App 172, 175; 175 NW2d 344 (1970), *lv den* 384 Mich 751 (1970). See also MCL 600.5801(4); MSA 27A.5801(4). When a landowner takes possession of land of an adjacent owner, with the intent to hold to the true line, the possession is not hostile and adverse possession cannot be established. *Warner v Noble,* 286 Mich 654; 282 NW 855 (1938); *Dubois v Karazin,* 315 Mich 598; 24 NW2d 414 (1946); *Ennis v Stanley,* 346 Mich 296; 78 NW2d 114 (1956); *Kettunen v Torreano,* 59 Mich App 652; 230 NW2d 14 (1975), *lv den* 394 Mich 791 (1975). The corollary to this rule provides that, when the possession manifests an intent to claim title to a visible, recognizable boundary, regardless of the true boundary line, the possession is hostile and adverse possession may be established. *Gregory v Thorrez,* 277 Mich 197; 269 NW 142 (1936); *Yatczak v Cloon,* 313 Mich 584; 22 NW2d 112 (1946); *Dubois v Karazin,* 315 Mich 598; 24 NW2d 414 (1946); *Walker v Bowen,* 333 Mich 13; 52 NW2d 574 (1952). Such is the law in every jurisdiction which adheres to the principle that the intention of the parties is the dispositive test in determining whether land is held adversely. See 80 ALR2d 1161, §§ 3-4, pp 1174-1181.

The plaintiff relies too heavily upon the remarks of the defendants at trial concerning intent and hostility. Acts which openly manifest a claim of ownership are sufficient:

" 'The belief or knowledge of the adverse claimant is not as important as his intentions. The intention is the controlling consideration, and it is not the knowledge or belief that another has a superior title, but the recognition of that title that destroys the adverse character of possession. Claim of title or claim of right is essential to

adverse possession, but it is not necessary that an adverse claimant should believe in his title, or that he should have any title. He may have no shadow of title and be fully aware of that fact, but he must claim title. He may go into possession without any claim of title, but his possession does not become adverse until he asserts one; and he may assert it by openly exercising acts of ownership, with the intention of holding the property as his own to the exclusion of all others.

" ' " 'Claim of title' is where one enters and occupies land, with the intent to hold it as his own, against the world, irrespective of any shadow or color or right or title." 2 CJ, p 168, § 324.

" ' "It is not necessary, however, that the party in possession should have expressly declared his intention to hold the property as his own, nor need his claim thereto be a rightful one. That his acts and conduct clearly indicate a claim of ownership is enough." 1 RCL, p 706, § 18.' " *Walker v Bowen, supra,* pp 20-21, quoting in part from *Smith v Feneley,* 240 Mich 439, 441-442; 215 NW 353 (1927).

We find direct support for our conclusion in a decision from the Arkansas Supreme Court which addressed the plaintiff's contention on similar facts. In *Rye v Baumann,* 231 Ark 278; 329 SW2d 161 (1959), the plaintiff-appellee was held to have acquired title by adverse possession notwithstanding his statement at trial that he did not intend to claim any land outside of that identified in the deed. The court rejected the defendant's arguments that this statement was fatal to the adverse claim:

"We think the remark relied on by the Appellant loses its force when considered along with the testimony of [defendant's predecessor-in-interest] on direct examination, and the fact that [defendant's predecessor-in-interest] put a roof on the house and windows in it and cut a twelve foot room from the back of the house and rented it out and remained in possession, without

disturbance from Appellant or his predecessor, for a period of over seven years. In a situation such as this, an honest claimant upon being asked about his intent, unless previously warned, might not think to qualify his answer so as to claim what he considered his own, but would state that he claimed only his own, and on such a chance statement his claim would disappear. In arriving at the intent of the disseisor we think it is better to weigh the reasonable import of his conduct in the years preceding the litigation rather than rely on one remark made during the stress of cross-examination * * *." (Footnote omitted.) 231 Ark 280-281.

In the present case, the conduct of the defendants clearly establishes their intent to claim title to all the land within the boundary of the fence. "The hostile character of such possession under a claim of right follows from the conduct * * * of which defendant and [his] predecessors in title were charged with notice." *Walker, supra,* p 23. The uncontroverted testimony establishes that since at least 1952 the coterminous landowners of these properties have indicated to the community that the fence marked the appropriate boundary. This is sufficient to render the possession of the defendants adverse. *Murry v Hudson,* 65 Mich 670, 675; 32 NW 889 (1887). The Supreme Court stated the following in *Gregory v Thorrez, supra,* pp 201-202:

"[A] boundary line long treated and acquiesced in as the true line, ought not to be disturbed on new surveys. *Smith v Hamilton,* 20 Mich 433, 438 (1870); *Joyce v Williams,* 26 Mich 332 (1873). Fifteen years' recognition and acquiescence are ample for this purpose *(Stewart v Carleton,* 31 Mich 270 [1875]); and in view of the great difficulties which often attend the effort to ascertain where the original monuments were planted, the peace of the community requires that all attempts to disturb lines with which the parties concerned have long been

satisfied should not be encouraged. *Diehl v Zanger,* 39 Mich 601 (1878)."[1]

Therefore, the holding of this Court in *Mumrow v Riddle, supra,* did not state new law on the question of what constitutes hostility. Rather, the Court properly observed the factually dependent nature of the hostility concept. In *Mumrow,* the defendants appealed from an injunction which prevented them from using a driveway which crossed the corner of plaintiffs' lot. The evidence established that the defendants constructed the driveway in 1952 and that neither plaintiffs nor their predecessor-in-interest objected until 1972. The trial court held, *inter alia,* that the defendants had failed to establish the hostile or adverse character of the easement. This Court reversed upon the following examination of the facts:

"The nature of the use was such as to indicate that it was made under 'claim of right'. There was no testimony that defendants asked for or received the permission of the Durbins to build the driveway. The Durbins apparently never objected; the driveway was constructed and used continuously. Defendant Riddle testified that he never asked the permission of the Durbins to build his driveway. He testified that he believed that,

---

[1] In his supplemental opinion, the trial judge also concluded that title to the disputed property vested in defendants under the doctrine of acquiescence. The doctrine of acquiescence means simply that, where a boundary line is acquiesced in by abutting landowners for the statutory period of 15 years, the boundary is fixed. *Jackson v Deemar,* 373 Mich 22, 25-26; 127 NW2d 856 (1964).

On appeal, plaintiff argues that this Court should not approve that portion of the lower court's decision because the doctrine of acquiescence was not pled by either the Buckinghams or Seklocks. However, we find the issue first raised by the defendants in their trial brief. Moreover, the application of the doctrine of acquiescence is an indispensible component of a claim of title by adverse possession when that claim is based upon the claimant's intent to possess to a visible boundary. *Dubois v Karazin,* 315 Mich 598, 603; 24 NW2d 414 (1946); *Gregory v Thorrez,* 277 Mich 197, 201; 269 NW 142 (1936). The combination of a boundary line which has long been fixed by agreement and the assertion of a claim of right by the one in possession is fatal to plaintiff's contention.

since any portion of their property he might be crossing was within the highway right of way, he was legally entitled to run his driveway across it to reach the road. Nor did defendants ask for or receive permission from plaintiffs to continue using the strip of land as part of their driveway after plaintiffs purchased the property from the Durbins in 1965. Plaintiff Mumrow testified that he was aware, as early as January, 1966, that the driveway crossed his property; but he never discussed the matter with defendants.

"The trial court did not discuss the nature of defendants' user during the period the Durbins owned plaintiffs' property. In its opinion the court noted plaintiff Mumrow's testimony that, although he and defendants never talked about the use of the property, he felt that he was 'letting them use it' and did not 'mind' until he noticed that defendants were 'going to put concrete across it'. The court also noted Mumrow's testimony that at no time prior to 1972 did he have the impression that defendants were claiming the property as their own. The court then concluded:

" 'Since plaintiffs [sic] testified that he made no objection to the use made by the defendants of the disputed area, it cannot be said that the requisite element of hostility existed.'

"This conclusion is not in accord with the law controlling easements by prescription. The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will. Nor is the claimant required to make express declarations of adverse intent during the prescriptive period. Adverse or hostile use is use inconsistent with the right of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder." 67 Mich App 697-698 (citations omitted).

In the present case, while it is true that the defendants did not intend to claim beyond the true line, they did intend to claim all land within the fence. They did not recognize that their ownership was subservient to plaintiff's title. Defendants and plaintiff acknowledged in their negotiations concerning the boat wells that defendants had a legal

right to possession of the disputed area.[2] In all respects the defendants acted as the sole owners of the property, including maintaining the land. We hold that the trial court was correct to decide on these facts that defendants' possession was hostile. We find the rule succinctly stated in *Salter v Cobb*, 264 Ala 609, 612; 88 So 2d 845 (1956):

> "As between coterminous landowners where a question of boundary line is presented, when parties agree upon the location of a line fence or one of them proceeds to enclose his property and erects a fence intended as a line fence and holds actual and exclusive possession to it as such, his possession is adverse * * *. The contolling fact is one of intention and if there is an inference arising from the evidence that there was an intention on the part of the [possessor] to hold and enjoy the property up to the line claimed * * * as the true dividing line between the property, with the assent or apparent recognition of it as such on the part of [the adjoining landowner] and his predecessors in title for stated period, this is sufficient to discharge the complainant's burden of proof. And if the possessor considered and claimed the land up to the established line as her own, the possession is hostile even though she is claiming more than she owns and claims by mistake of fact. Though the established division line might have been erroneous in fact, if it may be inferred that the fence was believed to be the true line and the claim of ownership was to the fence, the possession is adverse and 'does not originate in an admitted possibility of a mistake.' " (Citations omitted.)

## II

The statutory period for possession in the instant case is 15 years. MCL 600.5801; MSA 27A.5801. The Buckinghams held the land for 11 years prior to the institution of plaintiff's action.

---

[2] The record reveals that, when the defendants Buckingham rented space to a boater in a boat well which placed the boat slightly on the other side of the fence, the parties agreed that the plaintiff's predecessor-in-interest should receive $35 for the use of the water.

The trial court allowed the Buckinghams to apply 4 of the 10 years from the Seklocks' prior possession of the property. We find no error in this ruling.

An adverse claimant is permitted to add his predecessor's period of possession if he can establish privity of estate by mention of the disputed lands in the instrument of conveyance or parol references at the time of the conveyance. *Dubois v Karazin, supra,* pp 605-606. *Siegal v Renkiewicz Estate,* 373 Mich 421, 425; 129 NW2d 876 (1964); *Caywood v Dep't of Natural Resources,* 71 Mich App 322, 334; 248 NW2d 253 (1976), *lv den* 399 Mich 845 (1977). The privity of estate is clearly established on the unequivocal testimony of Rodimer Seklock and James Buckingham that the disputed property was orally agreed and understood to be within the boundaries of the Seklock tract when sold in 1969.

The judgment is affirmed.

## APPENDIX