TOWNSHIP OF KALAMAZOO *v.* KALAMAZOO
COUNTY SUPERVISORS.

1. MUNICIPAL CORPORATIONS — ANNEXATION — ELECTIONS — INJUNC-
TION — EQUALLY DIVIDED COURT.

Order dismissing bill to enjoin the holding of an election on the
question of annexation of 2 portions of a township to a city is
affirmed by an equally divided court.

2. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTE.

No costs are allowed in suit to enjoin the holding of an election
on question of annexation of territory to a city, the con-
struction of a statute and a public question being involved.

Appeal from Kalamazoo; Beers (Henry L.), J.,
presiding. Submitted January 10, 1957. (Docket
No. 36, Calendar No. 47,040.) Decided July 31, 1957.

Bill by Township of Kalamazoo, a municipal cor-
poration, and 4 of its taxpayers, against the Board
of Supervisors of Kalamazoo County, the City of
Kalamazoo, both municipal corporations, and certain
of their officials, to restrain elections on the question
of 2 annexations. Twelve residents and taxpayers
intervene as parties defendant. Issue submitted on
defendants' motions, and bill dismissed. Plaintiffs
appeal. Affirmed by an equally divided court.

*Smith & Bauckham,* for plaintiffs.

*Morris & Culver,* for defendants city of Kalama-
zoo and its clerk.

*Jacob A. Dalm, Jr.,* Prosecuting Attorney, for
defendants county of Kalamazoo, its supervisors
and its clerk.

*Richard H. Morris,* for intervening defendants.

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Appeal and Error § 1160.

Sharpe, J. (*for reversal*). This suit was instituted by the township of Kalamazoo and certain other individuals living in said township to test the annexation proceedings whereby a portion of Kalamazoo township was voted to be annexed to the city of Kalamazoo. It appears that in February, 1955, the board of supervisors of Kalamazoo county considered a petition, presented to it under the provisions of the home-rule act, requesting the annexation of the entire township of Kalamazoo to the city of Kalamazoo. The board of supervisors placed the proposal on the April 4, 1955, ballot at which time it was defeated.

On May 23, 1956, separate petitions covering separate portions of Kalamazoo township were delivered to the supervisor of Kalamazoo township seeking an election on the annexation of areas known as "Knollwood" and "Burke Acres." Because these petitions were filed within 2 years of the first petition it was required that they be signed:

"By a *number of taxpayers* assessed for real property taxes within the area proposed to be annexed *whose names* appear on the latest assessment rolls * * * equal to 35% of the total *number of names* which appear on the assessment rolls." (Italics supplied.) (CL 1948, § 117.8, as amended by PA 1955, No 147 [Stat Ann 1955 Cum Supp § 5.2087].)

On June 6, 1956, the township supervisor filed a statement with the county clerk setting out the number of names on the assessment rolls of Knollwood and Burke Acres. No attempt was made to eliminate duplication of names. The number of names in the 2 parcels of land were as follows: Knollwood, 1,153; Burke Acres, 1,694.

After receipt of this statement the county clerk determined the number of different names on the

assessment rolls for the areas involved to be as follows: Knollwood, 678; Burke Acres, 1,230.

The county clerk determined that the 35% requirement was satisfied because signatures of names of taxpayers assessed for real-estate property taxes within the areas proposed to be annexed and whose names appeared on such assessment rolls for the areas totalled: Knollwood, 340; Burke Acres, 578.

On June 26, 1956, the county clerk reported to the board of supervisors that the petitions appeared to be sufficient and recommended that a resolution be adopted placing the matter of annexation before the voters of the city of Kalamazoo and Kalamazoo township at the August 7th primary election. Following such action upon the part of the county clerk the board of supervisors adopted a resolution for each area finding that:

"It appears to this board of supervisors that such petition has been signed by a number of taxpayers assessed for real property taxes within the area proposed to be annexed, whose names appear on the latest assessment rolls therein under the requirements of the general property tax, equal to 35% of the total number of names which appear on the assessment roll as being assessed for real property taxes within the area proposed to be annexed, and, * * *

"It appears to this board of supervisors that said petition is in due and proper form and conforms in all respects with the State law concerning proceedings in this type of matter, as is set forth in * * * [CL 1948, § 117.6 *et seq.,* as amended (Stat Ann 1949 Rev and Stat Ann 1955 Cum Supp § 5.2085 *et seq.*)]."

The resolutions placed the question on the annexation of the 2 areas on the ballot for the special election to be held on August 7, 1956, which was the date of the State primary election. On July 13, 1956, plaintiffs filed a bill of complaint in the circuit court

of Kalamazoo county in which it is alleged in substance:

"1. The petitions were not signed or checked for signing by qualified electors who are freeholders and who reside within the city or township, equal to 1% of the population of the city and township.

"2. The petitions were not signed by taxpayers assessed for real property taxes within the areas proposed to be annexed whose names appear on the latest assessment rolls therein, equal to 35% of the total number of names appearing on such assessment rolls within the areas proposed for annexation.

"3. No description of the land and area represented by a 35% signer followed his signature.

"4. The petitions did not include a map or drawing showing clearly the area proposed to be annexed.

"5. The petitions did not include an accurate description of the boundaries of the territory to be annexed.

"6. A sworn statement did not accompany the petitions showing the total area of the land, exclusive of streets, lying within the areas proposed to be annexed.

"7. The petitions were not signed, or checked for signatures, of 850 registered electors in the township or city of Kalamazoo.

"8. The Burke Acres area was neither contiguous to the city of Kalamazoo nor a logical and reasonable addition to the city of Kalamazoo, by virtue of its size, shape and location.

"9. The petitions were not properly checked to ascertain if they complied with the statutory requirements."

Upon the filing of the bill of complaint an order to show cause was entered and noticed for hearing on July 18, 1956. On July 18, 1956, a motion to dismiss plaintiffs' bill of complaint was filed by the prosecuting attorney as attorney for the board of supervisors for the following reasons:

"1. Plaintiffs have a complete and adequate remedy at law by an action in quo warranto, which is the exclusive remedy for this type of action.

"2. The bill of complaint in the above entitled cause is not properly verified since the plaintiffs, Victor Campbell, Maxine Campbell, Robert A. Hoare and Zell Hamilton, have not verified the bill of complaint.

"3. In the absence of proper verification, the bill of complaint is not supported by affidavits showing a need for the granting of the relief prayed for.

"4. The township of Kalamazoo, as a municipal corporation, has not sufficient interest to maintain said suit since the damages alleged are purely speculative.

"5. The action of the board of supervisors of Kalamazoo county is complete and it is not a proper party defendant."

On the same day the city of Kalamazoo filed a motion to dismiss for the following reasons:

"1. It affirmatively appears therein that the Kalamazoo county board of supervisors and all other persons involved in the proceedings therein described complied with or substantially complied with all applicable statutes and other applicable rules, regulations or constitutional provisions applicable thereto.

"2. That this court has no jurisdiction to issue the temporary or permanent injunctions therein prayed for.

"3. The bill of complaint discloses on its face that all of the proceedings taken and therein described were regular and in accordance with the Constitution and statutes of the State of Michigan and the powers therein conferred upon the board of supervisors of Kalamazoo county, and other local officers.

"4. That the petitions therein described as filed were sufficient in all material respects.

"5. That section 8 of the home-rule act (PA 1909, No 279, as amended) is constitutional.

"6. That the resolutions adopted by the board of supervisors for Kalamazoo county and therein described, and all parts thereof, were regular and within the scope of the power of such board as defined in the statutes and laws relating thereto.

"7. That no issues raised therein warrant the issuance of an injunction prohibiting the holding of the elections as therein directed or described."

On August 1, 1956, the trial court entered an order dismissing plaintiffs' bill of complaint.

Plaintiffs appeal and urge that the trial court was in error in deciding the cause when the same was not at issue, as defendants did not file an answer to plaintiffs' bill of complaint. It appears that on July 18, 1956, at the hearing to show cause the following transpired:

*"Mr. Dalm* (attorney for board of supervisors): If it please the court, the motion which I have made and just filed with the court deals with jurisdictional matters and asks that the bill of complaint be dismissed on certain grounds relating to jurisdiction. It seems to me it would be proper to hear that matter first because if that were decided by the court, then there would be no further reason to proceed with this hearing after that.

*"Mr. Morris* (attorney for city of Kalamazoo and Marie Filarski): The motion which I have made goes to the merits and alleges that the bill of complaint does not allege a cause of action and should be dismissed on that ground; it would seem to me that that motion should await determination, or at least the hearing, upon the jurisdictional motion.

*"Mr. Bauckham* (attorney for plaintiffs): It is agreeable with me that they argue their motions first. We might as well proceed with that.

*"The Court:* It is up to you. Normally I would take a motion under advisement and hear the entire matter so in case there is an appeal the whole situation can be disposed of and not sent back for hearing, but if you prefer, I will hear your motions.

*"Mr. Bauckham:* Of course, if that is your feeling, your Honor, that would be agreeable with me. I would just as soon hear the whole matter also and have a decision on the entire matter. * * *

*"Mr. David Morris:* After a conversation among counsel, your Honor, it is stipulated between counsel in open court that the issue of the temporary injunction will be considered submitted upon the record and arguments as now made with the exception that each side should have the privilege of filing here in the clerk's office and placing in the mail to your Honor, if you are not here at that time, by not later than next Wednesday noon, any reply brief that either side desires to prepare and submit. In other words, we have decided, both sides, that additional testimony or testimony on the temporary injunction aspect of this case, should be waived."

In an opinion upon this issue the trial court stated:

"The plaintiffs in this case file this bill of complaint seeking injunctive relief by way of restraining the holding of the above election, and the matter comes before this court upon an order directed to the defendants to show cause, if any there be, why such a restraining order should not issue.

"Pursuant to the direction of the order, a hearing was held and, by agreement, the matter was submitted to the court upon the pleadings filed in the cause, supplemented by briefs of respective counsel."

In our opinion the plaintiffs consented to the submission of the motions to dismiss. It is now too late to claim that the issues were not submitted on their merits.

Plaintiffs also urge that the action of the board of supervisors in passing annexation resolutions pursuant to petition is subject to judicial review. We are not unmindful of the fact that CL 1948, § 117.8, as amended by PA 1955, No 147 (Stat Ann 1955 Cum Supp § 5.2087), provides, "After the adoption of such resolution neither the sufficiency nor legality of

the petition on which it is based may be questioned in any proceeding."

We also note that the same section of the statute provides, "and if, before final action thereon, it shall appear to said board or a majority thereof that said petition or the signing thereof does not conform to this act, or contains incorrect statements, no further proceedings pursuant to said petition shall be had." We have repeatedly held that the question of lack of jurisdiction may be properly presented and passed upon by a court at any stage of pending proceedings. See *In re Cody's Estate*, 293 Mich 697; *Township of Warren v. Raymond*, 291 Mich 426; *Warner v. Noble*, 286 Mich 654. Nor can the jurisdiction of the subject matter be given by consent or waiver. See *Carpenter v. Dennison*, 208 Mich 441. In our opinion that part of the act providing, "After the adoption of such resolution neither the sufficiency nor legality of the petition on which it is based may be questioned in any proceeding," does not deprive the interested parties or the courts from raising the question of jurisdiction. However, such lack of jurisdiction must clearly appear in said petition before a board of supervisors is deprived from passing on the validity of the same.

Under CL 1948, § 117.6 (Stat Ann 1949 Rev § 5.2085) the requirements of the petition are clearly set out. It specifies the number of signers necessary, requires a description of the land and area represented by each signer of the petition, the area to be annexed. CL 1948, § 117.7, as amended by PA 1955, No 33 (Stat Ann 1955 Cum Supp § 5.2086), requires that the petition shall accurately describe the proposed boundaries of the area to be annexed. CL 1948, § 117.8, as amended by PA 1955, No 147 (Stat Ann 1955 Cum Supp § 5.2087), provides that if the above requirements are not shown in the petition, or the petition contains incorrect statements,

then no further proceedings shall be had on said petition.

Unless there is substantial compliance with the requirements of the statute the board of supervisors has no jurisdiction to adopt a resolution authorizing an election.

It is urged by plaintiffs that the petition filed with the county clerk did not contain 35% of the total number of names which appear on the assessment rolls. Under the act in question it became the duty of the supervisor of Kalamazoo township to report to the county clerk as of the date the petition was filed the total number of names on such assessment rolls within the area to be annexed. Acting under such authority the supervisor of Kalamazoo township reported that the total number of names on the assessment rolls within Knollwood was 1,153 and that the total number of names on the assessment rolls within Burke Acres was 1,694.

It also appears that the county clerk determined that the petitions filed contained 340 names for Knollwood and 551 for Burke Acres. He also determined that the number of different names on said assessment rolls were as follows: Knollwood, 678; Burke Acres, 1,230, and that the number of names of taxpayers assessed for real property taxes within the areas proposed to be annexed were as follows: Knollwood, 340; Burke Acres, 578, and also reported to the board of supervisors that such petitions for annexation of Knollwood and Burke Acres appeared to be sufficient. In arriving at his conclusion as to the sufficiency of names, the county clerk only counted the different names on the assessment rolls. Thus if the name "John Smith" appeared on the assessment rolls in 3 or more places, he was only counted once, regardless of the possibility that there may be 3 different persons by the name of "John Smith" on the assessment rolls.

The act in question provides that the township supervisor shall certify to the board of supervisors the total number of names on such assessment rolls. The act does not provide that the township super- visor shall only certify the names of different per- sons on the assessment rolls nor does the act author- ize the county clerk to certify the names on the as- sessment rolls as was done in the instant case. It clearly appears that under the certification of the township supervisor there were not sufficient names on the petition to warrant the adoption of a resolu- tion submitting the question to the voters.

We hold that the statuory powers conferred upon boards of supervisors with regard to change of municipal boundaries cannot be legally exercised be- fore a proper petition has been filed with said board. In the case at bar the petition showed an insufficient number of signers to give the board jurisdiction to entertain the petition and authorize an election. That part of the act which reads, "After the adoption of such resolution neither the sufficiency nor legality of the petition on which it is based may be ques- tioned in any proceeding," has no application to a situation where the board of supervisors has no jurisdiction to entertain a petition or authorize an election.

Defendants urge that a chancery court has no power to entertain a suit to pass upon the legality of a resolution adopted by the board of supervisors and rely upon *French* v. *County of Ingham,* 342 Mich 690. In that case we held that a court of equity has no power to interfere to prevent a board of super- visors from performing the duty expressly vested in it by statute. The above case does not apply to the facts in the case at bar. In the instant case a chancery court was resorted to for the purpose of enjoining the board of supervisors from perform-

ing an unauthorized act.   In 18 Am Jur, Elections, § 117, p 255, it is said:

"Most of the courts, while conceding that the holding of elections is a political matter, not ordinarily cognizable by a court of equity, hold that where a proposed election is to be held on a question relating to the change of boundaries in political subdivisions, relocation of county seat, issuance of bonds, or other related matters, and the ordinance or statute under which it is to be held is void, or the election is without apparent authority of law, equity will enjoin the holding of such election upon the ground of an unlawful expenditure of public funds."

Under the facts in this case a court of chancery had jurisdiction to entertain a bill of complaint to determine the validity of a resolution adopted by the board of supervisors when such bill of complaint was filed before the authorized election.   Other questions have been raised, but in view of our decision in this matter, they require no discussion.   It follows that the annexation elections of Knollwood and Burke Acres were illegally held and a decree should be entered setting aside such elections.

No costs will be allowed as the construction of a statute is involved.

SMITH, CARR, and BLACK, JJ., concurred with SHARPE, J.

KELLY, J. (*for affirmance*).   I cannot agree with my Brother's opinion that an illegal election was held and that this Court should order a decree to be entered setting aside such election because "in the case at bar the petition showed an insufficient number of signers to give the board jurisdiction to entertain the petition and authorize an election."

Appellants contend, and Justice Sharpe so holds, that when the legislature used the words "such petition shall have been signed by a number of taxpayers assessed for real property taxes within the area proposed to be annexed whose names appear on the latest assessment rolls therein under the requirements of the general property tax, equal to 35% of the total number of names which appear on the assessment rolls prepared pursuant to said act as being assessed for real property taxes within the area proposed to be annexed," that the 35% refers to 35% of the total number of parcels listed on the assessment rolls within the area and not to 35% of the total number of owners within the area.

Appellants endeavor to sustain such a construction of the statute by stating that:

"Such a construction is a logical and reasonable one. It in no way obstructs or prevents the successful circulation of annexation petitions. It merely determines the exact number of signatures required for an annexation petition. It determines this by the simple method of counting names on an assessment roll without the necessity of being concerned with the complex problem of attempting to subtract those names of persons owning, or appearing to own, more than 1 parcel of property. It also affords the person owning several parcels of property a little more control over whether his property will be made subject to an annexation vote or not. * * *

"This interpretation of the law further coincides with a situation involving the ownership of stock in a private corporation. A person owing 10 shares has 10 votes, and a person owing 1 share has only 1 vote. Here, a person owning 10 platted lots affected by annexation would be counted 10 times on the petition, while a person owning but 1 lot would only be counted once. Any other construction would certainly prejudice the owner of a large number of lots in an area who did not want annexation, but who

would have no more to say in the matter of the petition than the owner of one 66 x 132-foot lot."

Appellees point to the fallacy in plaintiffs' reasoning, as follows:

"Suppose 4 owners of 40-acre parcels side by side were split on the question of annexing to an adjoining city. Could one of them accomplish his purpose to have an annexation election by simply platting his ground to 10 lots so that his name could be counted 10 times as often as those of his neighbors? Would he be allowed 10 votes to his neighbor's one at the ensuing election? This is not the intent of the law."

No question of fraud is presented in this appeal in regard to either the action of the county clerk or the board of supervisors. No one contends that the trial court did not properly find that "it is undisputed that if only the individual names are counted, the petitions as filed contain more than 35% of the total number."

It is apparent that one property owner within the area affected could possess one parcel of such size and value to be worth 20 times the value of the owner of 20 separate parcels. I cannot construe the statute to mean that the legislature intended that a question of valuation, or a question of ownership of various parcels within an area, should be the determining factor in regard to the sufficiency of petitions for annexation.

The petitions herein were sufficient. A decree should not be entered setting aside such election, but, instead, the opinion and order of the trial court dismissing the bill of complaint should be affirmed. No costs, a public question being involved.

DETHMERS, C. J., and EDWARDS, and VOELKER, JJ., concurred with KELLY, J.