# STATE OF MICHIGAN

# COURT OF APPEALS

---

CRAIG A. MARTYN and DIANE L. MARTYN,

      Plaintiffs/Counterdefendants-
      Appellees,

v

MEL WHITE and BARBARA WHITE,

      Defendants/Counterplaintiffs-
      Appellants.

UNPUBLISHED
August 9, 2018

No. 337867
Lapeer Circuit Court
LC No. 15-048596-CH

---

Before: O'BRIEN, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Defendants, Mel and Barbara White, appeal as of right the trial court's opinion and order, entered after a bench trial, holding that plaintiffs, Craig and Diane Martyn, had obtained by adverse possession a portion of the Whites' property on which the Martyns' predecessors-in-interest, Mark and Kimberly Rich, had constructed a shed. The court also awarded the Martyns a prescriptive easement to enter the Whites' property to access and use the shed. In addition, the court found that the Whites established their counterclaim for trespass, but awarded them only nominal damages of $10.[1] We conclude that the trial court clearly erred by finding that the Martyns established the 15-year period of land use required for adverse possession. Accordingly, we reverse in part.

The Martyns and the Whites are neighbors in Hadley Township in Lapeer County. The Martyns' property is pie-shaped, making it wider in the back than in the front. When the Martyns' predecessors-in-interest, Mark and Kimberly Rich, owned the property, they added two sheds,[2] a patio composed of brick pavers, and a garden area at the back portion of the property,

---

[1] The trial court did not directly address the Martyns' alternative theory of acquiescence, but did state, in its findings of fact, that there was never an agreement between the parties to hold to a boundary other than the true boundary.

[2] Sale and appraisal documents refer to only one large shed. However, the shed consists of two separate portions that were constructed at different times. Because the period in which each portion was constructed is relevant to this case, we refer to them as separate structures.

in an area that Mark Rich (hereinafter "Rich") believed was part of their lot. The Martyns purchased the property from the Riches in 2013. An advertisement prepared by the Riches' real-estate agent described the property as including a large shed, and an appraisal for the property listed the shed and patio area as part of the property. After purchasing the property, the Martyns continued to use the sheds, patio, and garden areas.

In July and August 2014, Craig Martyn (hereinafter "Martyn") cleared an area bordering his property and the Whites' property of trees, stumps, and vines. He intended to put a garden in that area, which he believed was part of his property. Mel White (hereinafter "White") helped Martyn remove a tree stump. Martyn maintained that he only cleared trees that were dead or dying.

In September 2014, White informed Martyn that the sheds, patio, and garden were all on his property, which surprised Martyn. Both parties had surveys performed and they confirmed that the patio and sheds had been constructed on the Whites' property. The parties were not able to resolve their disagreement over the disputed property. In 2015, the Martyns filed this action to quiet title to the disputed areas, alleging title to the disputed portions under theories of adverse possession or acquiescence. The Whites filed a counter-complaint, alleging a claim for trespass based on Martyn's removal of trees from the Whites' property, and a claim for slander of title because the Martyns had filed a notice of lis pendens shortly after the Whites listed their property for sale. The Whites also requested costs and attorney fees on the ground that the Martyns' complaint was frivolous.

After a bench trial, the trial court found that the Martyns had established their claim for adverse possession with respect to "the portion of the real property on which the old shed was built to the extent the shed intruded onto land formerly owned by [the Whites] . . . ." The court denied the Martyns' claims with respect to the other areas for failure to show that they and their predecessors-in-interest encroached on the Whites' property for the necessary period of 15 years. The court awarded the Martyns a prescriptive easement to enter the Whites' property "to access, use, maintain and enjoy the old shed consistent with the level of burden that has been imposed on the servient estate for those purposes over the last 15 years." The court also found that Martyn had trespassed on the Whites' property, but awarded the Whites only nominal damages of $10 for the destruction of trees. The court rejected the Whites' counterclaim for slander of title, and denied their request for costs and attorney fees. This appeal followed.

The Whites challenge the trial court's findings of fact and conclusions of law with regard to its ruling that the Martyns established their claim for adverse possession regarding the older shed. The Whites also challenge the trial court's rulings that they failed to establish their claim for slander of title, and were entitled to only nominal damages of $10 concerning their claim for trespass. This Court reviews a trial court's findings of fact in a bench trial for clear error. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. *Castro v Goulet*, 312 Mich App 1, 3; 877 NW2d 161 (2015). The trial court's conclusions of law are reviewed de novo. *Ligon*, 276 Mich App at 124.

In *Wengel v Wengel*, 270 Mich App 86, 91-93; 714 NW2d 371 (2006), this Court addressed the general requirements for proving adverse possession:

-2-

The basis for a claim of adverse possession is found in MCL 600.5801, which provides, in pertinent part:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

Generally, an action for the recovery or possession of land must be brought within 15 years after it accrues. MCL 600.5801(4); *Kipka v Fountain*, 198 Mich App 435, 438; 499 NW2d 363 (1993). The *Kipka* panel, addressing the principles of adverse possession, stated:

> A claim of adverse possession requires clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. These are not arbitrary requirements, but the logical consequence of someone claiming by adverse possession having the burden of proving that the statute of limitations has expired. To claim by adverse possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. A cause of action does not accrue until the property owner of record has been disseised of the land. MCL 600.5829. Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership. [*Kipka*, *supra* at 439 (citations omitted).]

Other cases additionally indicate that the possession must be hostile and under cover of a claim of right. *McQueen v Black*, 168 Mich App 641, 643; 425 NW2d 203 (1988), quoting *Connelly v Buckingham*, 136 Mich App 462, 467-468, 357 NW2d 70 (1984). "The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will"; rather, hostile use is that which is "inconsistent with the right of the owner, without permission asked or given," and which "would entitle the owner to a cause of action against the intruder." *Mumrow v Riddle*, 67 Mich App 693, 698; 242 NW2d 489 (1976).

The Whites argue that the trial court clearly erred by finding that the use of the older shed existed continuously and uninterrupted for the requisite period of 15 or more years. See MCL 600.5801(4) and *Wengel*, 270 Mich App at 92.[3] Specifically, they contend that the trial court

---

[3] We note that a 15-year period also applies for the Martyns' alternative theory of acquiescence. *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (1996).

clearly erred in finding that the 15-year period commenced no later than March 31, 2000. We agree. Martyn admitted that he did not know when the older shed was constructed. Rich testified that he thought he constructed the older shed in either 1999 or 2000. Rich further testified that he thought he built the second shed two years later, and White testified that construction of the second shed occurred sometime after his mother moved in with his family in June 2002. Neither the trial court nor the Martyns point to anything in the record supporting the trial court's finding that the older shed was built no later than March 31, 2000. There appears to be no basis for the trial court's having picked this date.[4] This action was filed in April 2015, and the Whites filed an answer and counterclaim contesting the Martyns' claims on May 7, 2015. Because the older shed could have been constructed in, for example, June 2000,[5] there was not "clear and cogent proof" of 15 years of continuous and uninterrupted use. *Kipka*, 198 Mich App at 439.[6] As such, the Martyns failed to establish that they were entitled to the older shed by virtue of adverse possession.

The Whites argue that the statutory period ended in late 2014, after White had a survey performed and discovered that the shed encroached onto the Whites' property. The Whites contend that the parties reached an agreement or understanding at that time that the property belonged to the Whites and that Martyn would remove all items that encroached onto the Whites' land. Therefore, the Whites argue, any continued use of the property after September 2014 was with the Whites' permission and could not support a claim for adverse possession.

The trial court acknowledged that the parties learned of the encroachment in 2014, after both sides obtained surveys. The court found, however, that the parties thereafter attempted to negotiate a resolution of their dispute and were unable to reach an agreement. The trial court stated: "Specifically, this [c]ourt does not find that the parties mutually agreed to removal of the shed in exchange for forbearance of enforcement of the [d]efendants' property rights." The court therefore rejected the Whites' claim that any continued use after September 2014 was permissive.

The Whites have failed to show that the parties' negotiations were sufficient to render the Martyns' claim to the subject property a permissive use. See *Rozmarek v Plamondon*, 419 Mich 287, 296; 351 NW2d 558 (1984) (holding that the plaintiffs' involvement in negotiations to buy

---

[4] The trial court stated that Rich testified that he constructed the shed "in the spring of either 1999 or 2000," but Rich's testimony does not refer to construction in the "spring." At any rate, even if Rich *had* testified about construction in the "spring," "spring" encompasses months beyond March and lasts into June.

[5] Indeed, nothing in the record supports a higher probability of the shed having been constructed in March 2000 rather than June 2000.

[6] Despite the Martyns' failure to establish this required element of adverse possession (and the resultant failure of their claim), we will address the additional arguments relating to adverse possession because the reasonableness of the Martyns' positions relates to the issues of sanctions and slander of title, discussed later in this opinion.

the property at issue did not defeat their claim to title for the same property by way of adverse possession). After the surveys were performed by both sides, the parties were aware that the sheds, patio, and garden encroached onto the Whites' land. While the parties discussed the situation and tried to work out a solution, the only action taken was that Martyn removed some planter boxes. The Martyns' offer to purchase the disputed portions of land was rejected. The Whites made no effort to assert their rights to the land before this action was filed. Accordingly, the trial court did not clearly err by rejecting the Whites' argument that the Martyns' continued use of the shed transitioned into a permissive use after September 2014 and thus defeated their claim for adverse possession.

The Whites also argue that the trial court erred by finding that the Martyns were permitted to tack their approximate two-year possession of the property onto the Riches' prior possession to satisfy the requisite 15-year period. The trial court found that privity with the Riches existed because of parol representations made by the Riches' real-estate agent when the property was sold to the Martyns. The court stated:

> In the immediate case, privity between [p]laintiffs and their predecessors in interest is established by parole [sic] statements made by the predecessors' agents at the time of conveyance indicating that the land to be transferred included the shed and had a width of 260 feet, which is greater than the property dimensions in the legal description. Although the agents disclaimed any liability arising from reliance on these representations, these parole [sic] statements indicate an intent to transfer land beyond what is specified in the deed, including the disputed land. This is sufficient to establish privity for purposes of tacking.

> As explained in *Siegel v Renkiewicz Estate*, 373 Mich 421, 425; 129 NW2d 876 (1964):

> [I]t has long been the rule in Michigan that the statutory period of possession or user [sic] necessary for obtaining title by adverse possession or easement by prescription is not fulfilled by tacking successive periods of possession or user [sic] enjoyed by different persons in the absence of privity between those persons established by inclusion by reference to the claimed property in the instruments of conveyance or by parol references at time of the conveyances.

The Martyns presented evidence that representations were made by the Riches' real-estate agent that the property included the two sheds and the patio. Indeed, the real-estate listing described the property as including a "large storage shed." An appraisal report prepared for the property also listed "a storage shed" as an additional feature of the property. Rich acknowledged that he assumed that the sale of the property to the Martyns included the shed. Thus, Rich intended for the shed to be transferred to the Martyns by the sale, and the Martyns were led to believe that they were acquiring the area that included the shed. In light of this evidence, the trial court did not clearly err by finding that there was privity between the Martyns and the Riches, sufficient to allow the Martyns to tack on the Riches' prior possession of the property in order to attempt to satisfy the requisite 15-year period for adverse possession. *Id*.; see also *Dubois v Karazin*, 315 Mich 598, 605; 24 NW2d 414 (1946). Although the Whites emphasize that the area encompassing the shed was not included in the deed transferring title to the

Martyns, parol statements at the time the property was conveyed can establish privity. Therefore, we reject this claim of error.

The Whites argue that the trial court erred by finding that the element of hostility was established because Rich testified that when he built the first shed, he intended for it to be located fully on his own property and did not know that it encroached onto the Whites' property. The Whites contend that because Rich believed that the shed was on his own land, trial court erred by finding that his construction and use of the shed was hostile to the Whites' property rights.

In *Gorte v Dep't of Transp*, 202 Mich App 161, 170-171; 507 NW2d 797 (1993), the Court stated:

> Adverse possession requires a showing of clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the applicable statutory period. The possession must also be hostile to the title of the true owner. Where a landowner possesses the land of an adjacent owner with the intent to hold to the true line, the possession is not hostile and cannot establish adverse possession. By contrast, where a person possesses the land of another intending to hold to a particular recognizable boundary regardless of the true boundary line, the possession is hostile and adverse possession may be established. Simply being mistaken with regard to the true boundary line . . . does not defeat a clam of adverse possession. [Citations omitted.]

It is not easy to see the difference between the "first group" ("[w]here a landowner possesses the land of an adjacent owner with the intent to hold to the true line") and the "second group" ("where a person possesses the land of another intending to hold to a particular recognizable boundary regardless of the true boundary line") as discussed in *Grote*. In *DeGroot v Barber*, 198 Mich App 48, 52-53; 497 NW2d 530 (1993), the Court explained the difference as follows:

> [W]e have come to the conclusion that there is a distinction between the two concepts, albeit a subtle one. In our view, the distinction is between (1) failing to respect the true line, while attempting to do so, and (2) respecting the line believed to be the boundary, but which proves not to be the true line. Thus, in *Warner* [*v Noble*, 286 Mich 654; 282 NW 855 (1938)], the parties missighted along survey stakes in locating the boundary line before the building of a cottage, which proved to encroach on the neighboring lot. The Court concluded that there was no adverse possession inasmuch as the parties intended to hold to the true line. That is to say, they failed to respect the true line while attempting to do so and, therefore, there could be no adverse possession. An example of the second principle enunciated above, that adverse possession is established where the intent is to claim title to a visible, recognizable boundary, is illustrated in *Connelly*[, *supra*]. In *Connelly*, the defendants claimed ownership of property to a fence line, apparently under the mistaken belief that the fence accurately depicted the boundary between their property and the plaintiff's property. In fact, approximately 627 square feet over which the plaintiff held title was located on

the defendants' side of the fence. The trial court concluded that defendants had established title by adverse possession, and this Court affirmed. Thus, adverse possession by the {"pageset": "S1a"} defendants was established despite the fact that they were respecting the line believed to be the boundary, but that proved not to be the true line.

In the present case, Rich testified about respecting a "stake" that "had always been there" and that he assumed represented the property line. As stated by the Whites themselves on appeal, "Rich clearly testified that he knew where the property line was at the road and believed he was following the line when he built the shed." Accordingly, this case falls into the second category as discussed in *DeGroot*, and the possession was hostile. To the extent other cases, such as *McQueen*, suggest a different result, we note that *DeGroot* is binding under MCR 7.215(J)(1).[7]

As stated in *Gorte*, 202 Mich App at 170, "it would be unjust to limit the application of the doctrine of adverse possession to those adverse possessors who knew the possession was wrong, while excluding those whose possession was by mistake, thereby rewarding the thief while punishing the person who was merely mistaken." The trial court did not clearly err by finding that the Martyns established the element of hostility in support of their claim for adverse possession.

The Whites next argue that the trial court erred by awarding them only nominal damages of $10 on their trespass claim. In their counterclaim for trespass, the Whites alleged that Martyn trespassed on their land to intentionally cut down trees, entitling them to treble damages under MCL 600.2919. The trial court agreed that Martyn trespassed on the Whites' property to cut down several trees, but disagreed that the Whites were entitled to statutory treble damages, finding that the trespass arose from a mistake regarding the scope of permission granted, not willful misconduct. The Whites do not challenge the trial court's ruling that they were not entitled to treble damages because Martyn's trespass was not willful. See *Boylan v Fifty Eight LLC*, 289 Mich App 709, 725; 808 NW2d 277 (2010). They argue, however, that the trial court erred in awarding them damages of only $10, representing $1 for each wrongfully-removed tree.

At trial, conflicting testimony was presented regarding the condition of the wrongfully-removed trees. White believed that the removed trees were alive, although they may have had some damage. Martyn testified that "everything I cut down was dead or dying."[8] Although the Whites presented an expert who testified that the replacement value of the removed trees was $9,600, the expert did not actually see the trees before they were cut down and he did not offer an opinion on their condition, other than his belief that they were not dead. It was up to the trial court to resolve the conflicting testimony regarding the condition of the trees that were cut down. The trial court found that Martyn cut down 10 living trees with a trunk diameter of two inches or

---

[7] See also *Walker v Bowen*, 333 Mich 13, 17, 22-23; 52 NW2d 574 (1952).

[8] Martyn also testified that he did not cut "all of [the] trees" for which stumps remained; he stated that "[t]here were stumps already there."

more, but stated that "the trees at issue . . . were not healthy when cut."  Given the testimony presented, this finding was not clearly erroneous.  *Castro*, 312 Mich App at 3.  In light of the trial court's finding that none of the trees were healthy when cut, the court did not clearly err in finding that they had only nominal value.  Accordingly, we affirm the trial court's award of only $10 for the value of the removed trees.

The Whites also argue that the trial court erred by rejecting their counterclaim for slander of title.  We disagree.  The Whites alleged that the Martyns filed this lawsuit, including a notice of lis pendens, one week after the Whites listed their home for sale in April 2015.  The Whites alleged that the filing of the notice of lis pendens forced them to remove their property from the market.  A claim for slander of title may be established only where a person files a notice of lis pendens for a false or improper purpose, without lawful cause.  MCL 565.108; MCL 565.25(3); MCL 600.2907a(1); *Fed Nat'l Mtg Ass'n v Lagoons Forest Condo Ass'n*, 305 Mich App 258, 269-270; 852 NW2d 217 (2014).  Slander of title requires malice, which may not be inferred merely from the filing of an invalid claim.  *Id*.  The trial court found no malice, and this finding was not clearly erroneous.  Because the Whites had expressed a desire to sell their home, it was reasonable for the Martyns to file the notice of lis pendens to protect their alleged interest in the property that the Whites intended to sell,[9] and there was no evidence that the Martyns filed the notice with the intent to injure the Whites.  See *id*.  The trial court did not err when it rejected the Whites' counterclaim for slander of title.

In their final issue, the Whites argue that the trial court erred by rejecting their request for sanctions under MCR 2.114 and MCL 600.2591.  MCR 2.114(D) carries a mandatory sanction for violation, and a trial court's ruling regarding whether a party or an attorney violated MCR 2.114(D) is reviewed for clear error.  *Kitchen v Kitchen,* 465 Mich 654, 661; 641 NW2d 245 (2002); *Guerrero v Smith,* 280 Mich App 647, 677-678; 761 NW2d 723 (2008); *Contel Sys Corp v Gores*, 183 Mich App 706, 710-711; 455 NW2d 398 (1990).  A decision whether to award attorney fees under MCL 600.2591 is also reviewed for clear error.  *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013).

An attorney or a party is under an affirmative duty, pursuant to MCR 2.114(D), to conduct a reasonable inquiry into both the factual and legal viability of a pleading before it is signed.  *LaRose Market, Inc v Sylvan Ctr, Inc*, 209 Mich App 201, 210; 530 NW2d 505 (1995).  "The reasonableness of the inquiry is determined by an objective standard and depends on the

---

[9] We note that a document filed in the lower-court record demonstrates that the Martyns' belief in having an interest in the property was not unreasonable.  As discussed, the only area on which the Martyns' claim of adverse possession fails concerns the commencement date of the 15-year period, but they were relying, in part, on an "affidavit by owner in lieu of survey" in which the Riches stated that "[t]here has not been any construction on the land of any buildings, additions or improvements since purchasing the property[.]"  In other words, the Martyns had reason to believe the sheds had existed since the Riches' purchase of the land in 1995 and had been in use for the requisite 15-year period.

particular facts and circumstances of the case." *Id*. MCL 600.2591 permits a trial court to impose sanctions for the filing of a frivolous action.

> The question whether a claim is frivolous is evaluated at the time the claim was raised. The objective of sanctions is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose. Sanction provisions should not be construed in a manner that has a chilling effect on advocacy, that prevents a party from bringing a difficult case, or that penalizes a party whose claim initially appears viable but later becomes unpersuasive. [*Sprenger v Bickle*, 307 Mich App 411, 423-424 n 6; 861 NW2d 52 (2014) (quotation marks and citations omitted).]

The only area on which the Martyns' claim for adverse possession of the older shed fails is the commencement date of the 15-year period. Even though the Martyns may not have been certain regarding the commencement date, the trial court did not clearly err by finding that the claim for adverse possession was not frivolous, considering that the shed existed before the Martyns purchased the property and considering the "affidavit by owner in lieu of survey," mentioned above in footnote 9. With regard to the Martyns' claims as a whole, the trial court stated:

> At the time of filing their lawsuit, the Martyns knew that the property purportedly conveyed to them by the [Riches] included land that, according to survey measures, belonged to the Whites. The physical evidence of the [Riches'] possession and use of this land showed areas of apparently uncontested and exclusive use for a period of 15 years. The affidavit in lieu of survey stated that there had been no construction or improvements made since the property was purchased in 1995. There was no reason to believe that the boundaries of the property had changed at any time. From these facts the Martyns could reasonably infer that their predecessors in interest had always used and possessed the disputed land in much the same way. . . . [T]his [c]ourt finds that there was a sufficient factual basis for the complaint.

We find no clear error with respect to this finding.

We affirm the trial court on the issues of sanctions and slander of title but reverse the trial court with regard to the finding of adverse possession and the granting of a prescriptive easement.

/s/ Colleen A. O'Brien
/s/ Patrick M. Meter
/s/ Michael J. Riordan

-9-